WO

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Advocates for American Disabled Individuals LLC, et al., | No. CV-16-02141-PHX-GMS |
| Plaintiffs, | **ORDER** |
| v. | |
| Price Company, | |
| Defendant. | |

On September 1, 2016, this Court issued an Order for the Plaintiffs to Show Cause as to why this case should not be dismissed for lack of standing. (Doc. 20.) For the following reasons, the Court remands the case to state court.

**BACKGROUND**

Defendant Price Company ("Costco") had signs noting which handicapped parking spots were "van accessible." (Doc. 23 at 2.) However, these signs were posted lower than 60 inches above the ground. (Doc. 22 at 2.) Therefore, the signs were not in compliance with the Americans with Disabilities Act ("ADA"). (*Id.*) The Plaintiffs claim that the lower signage made it more difficult to identify which parking spots were van accessible. (*Id.*) On September 14, Costco replaced the defective signs with signs located more than 60 inches off of the ground. (Doc. 23 at 10.)

Plaintiff Advocates for American Disabled Individuals ("Advocates") does not make any allegations in the complaint regarding the nature of its interest in this proceeding. (Doc. 1.) In Plaintiff's Response to the Order to Show Cause, Advocates

1
2
3
4
5

alleges that it has "several members/principals who are disabled individuals with mobility impairments," including Ms. Shannon Puckett and Mr. David Ritzenthaler. (Doc. 22 at 1-2.) However, Advocates has yet to allege facts supporting the assertion that either Ms. Shannon Puckett or Mr. David Ritzenthaler qualifies as a member of its organization. (Doc. 1-2, Doc. 22.)

6
7
8
9
10
11
12
13
14
15
16
17
18

Plaintiff David Ritzenthaler is a legally disabled individual with a state issued handicapped license plate. (Doc. 1-2 at 3.) Mr. Ritzenthaler does not allege that he ever visited the Defendant's parking lot. (Doc. 1-2.) Rather, he alleges that he "became aware" that its parking lot signage violated the Americans with Disabilities Act (ADA) requirements. (Doc. 1-2 at 1.)  Likewise, Ms. Shannon Puckett alleges that at some point before September 8, 2016, she was informed that Costco's signage was defective. (Doc. 22-1 at 12.) It is unclear whether Ms. Puckett ever personally encountered the defective signage. There is a photograph of a receipt from a visit to the Defendant's store attached as an exhibit to the Plaintiff's Reply in Support of the Response to the Order to Show Cause. (Doc. 24-1 at 2.) However, the photograph of the receipt is not accompanied by any information that verifies that it belongs to Ms. Puckett or that the signs were defective at the time of the trip. (*Id.*) It is photographed in front of her statement claiming that "she has been informed" of defective signage at the Defendant's parking lot. (*Id.*)

19
20
21
22
23
24

The Plaintiffs' complaint follows the same format as countless other claims filed by the Plaintiffs' counsel, Mr. Peter Strojnik. There are no specific fact allegations regarding the Defendant's signs in the complaint itself. (Doc. 1-2 at 16.) The vague nature of the complaint led the court to issue an Order to Show Cause as to why the complaint should not be dismissed for lack of standing, as no injury to the Plaintiffs is apparent on the face of the complaint. (Doc. 1-2.)

25
**DISCUSSION**

26
**I.      The Plaintiff Does Not Have Standing to Pursue this Case.**

27
28
"To invoke the jurisdiction of the federal courts, a disabled individual claiming discrimination must satisfy the case or controversy requirement of Article III by

1
2
3
4
5

demonstrating his standing to sue at each stage of litigation." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011) (en banc). After reviewing Plaintiff's response to the Order to Show Cause, hearing oral arguments, and reviewing the supplemental briefings, the Court concludes that neither Advocates nor Mr. Ritzenthaler has standing to pursue this suit.

6
7
8
9
10
11

To assert standing under Article III, a plaintiff must illustrate three elements: 1) an injury-in-fact, 2) causation between the injury and the allegedly wrongful conduct, and 3) the injury is likely redressable by the court. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–561 (1992). The burden is on the plaintiff to establish that standing exists. *See id.* at 561 ("The party invoking federal jurisdiction bears the burden of establishing these elements.").

12
13

**A.      David Ritzenthaler Cannot Pursue this Suit Because He Did Not Suffer an Injury-in-Fact.**

14
15
16
17
18
19

An injury-in-fact must be "(a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S at 560 (internal citations and quotations omitted). To show particularity, the "party seeking review must allege facts showing that he is himself adversely affected." *Sierra Club v. Morton*, 405 U.S. 727, 740 (1972). To be concrete, an injury must be "real, and not abstract." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016) (internal quotations and citations omitted).

20
21
22
23
24

The ADA provides a means for disabled individuals to vindicate their right to frequent a business with "the full and equal enjoyment" of its facilities. 42 U.S.C. § 12182(a). The statute provides that if an individual is denied that right, he is entitled to injunctive relief. 42 U.S.C. § 12188(a). However, "Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo*, 136 S. Ct. at 1544.

25
26
27
28

In ADA cases, a plaintiff experiences a concrete injury-in-fact when "a disabled person *encounters an accessibility barrier* violating its provisions." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 947 (9th Cir. 2011) (emphasis added). The barrier does not need to completely hinder the plaintiff's ability to enter or use the facility, but it must

1    "interfere with the plaintiff's 'full and equal enjoyment' of the facility." *Id.* (quoting 42

2    U.S.C. § 12182(a)).

3        Mr. Ritzenthaler cannot assert standing in this case because he never suffered an

4    injury-in-fact. Nothing in Mr. Ritzenthaler's complaint or subsequent pleadings alleges

5    that Mr. Ritzenthaler personally encountered the barrier in question. (Doc. 1-2.) The

6    complaint merely alleges that "Plaintiff has actual knowledge of at least one barrier

7    related to third party disabled individuals" on the Defendant's property.  (*Id.* at 12.)

8        Contrary to Mr. Ritzenthaler's assertions, mere knowledge of the Defendant's lack

9    of signage is insufficient to show injury-in-fact. In *Pickern v. Holiday Quality Foods Inc.*,

10   the Ninth Circuit found that a plaintiff who had visited the defendant's grocery store in

11   the past had standing to bring an ADA claim based on the barriers he personally

12   encountered as well as the barriers that he did not have the chance to encounter during his

13   visit. 293 F.3d 1133, 1138 (9th Cir. 2002). That case did not involve a situation where, as

14   here, the plaintiff never frequented the defendant's establishment prior to filing suit. *Id.*

15   **B.    Advocates Cannot Assert Standing on Behalf of Ms. Shannon
16           Puckett or Mr. David Ritzenthaler.**

17       Nonprofit organizations may file lawsuits on behalf of their members even if they

18   do not have members in the traditional sense. *See Sierra Ass'n for Env't v. F.E.R.C.*, 744

19   F.2d 661, 662 (9th Cir. 1984) (allowing a California corporation to file suit as an

20   unincorporated association due to the presence of federal question jurisdiction). However,

21   in these situations, a nonprofit must still allege sufficient facts to show that a purported

22   member "possess[es] many indicia of membership—enough to satisfy the purposes that

23   undergird the concept of associational standing: that the organization is sufficiently

24   identified with and subject to the influence of those it seeks to represent as to have a

25   personal stake in the outcome of the controversy." *Oregon Advocacy Ctr. v. Mink*, 322

26   F.3d 1101, 1111 (9th Cir. 2003) (internal quotations and citations omitted).

27       The Supreme Court provided examples of relevant "indicia of membership" in

28   *Hunt*. *Hunt v. Washington State Apple Advert. Comm'n,* 432 U.S. 333, 344–45 (1977).

1   Key factors include whether the proposed constituency maintained control over who was

2   elected to leadership of the association, if the proposed constituency was the only group

3   that could serve on the leadership board, and whether the proposed constituency financed

4   the association's activities (including litigation). *Id.* The analysis turns on whether the

5   association "provides the means by which they express their collective views and protect

6   their collective interests." *Id.*

7        Mr. Ritzenthaler and Advocates' complaint does not mention Advocates or a

8   single purported member of Advocates by name. (Doc. 1-2.)  In fact, Advocates' basis for

9   injury remained unknown to the Court until it asserted associational standing through Mr.

10  Ritzenthaler and Ms. Puckett in its Response to the Order to Show Cause. (Doc. 22 at 1.)

11  The Response alleges that both individuals live in the Phoenix area, are motorists, and

12  have disability-parking plates. (Doc. 22 at 2.) It does not allege that any of the indicia of

13  membership listed above are present. (Doc. 22.)

14       Likewise, the supplemental briefing is devoid of any facts that could lead the

15  Court to find that Mr. Ritzenthaler or Ms. Puckett is a member of Advocates. (Doc. 27.)

16  The fact that Advocates "exists primarily to advance the purposes of the ADA through

17  serial litigation," (Doc. 27 at 5), cannot support a finding of any indicia of membership.

18  Additionally, Ms. Puckett's bare assertion that she is a member of Advocates is

19  insufficient to support a finding "that the organization is sufficiently identified with and

20  subject to the influence of those it seeks to represent as to have a personal stake in the

21  outcome of the controversy." *Oregon Advocacy Ctr.*, 322 F.3d at 1111 (internal

22  quotations and citations omitted).

23       Advocates had several opportunities to assert facts supporting that Ms. Puckett or

24  Mr. Ritzenthaler are members of Advocates. Advocates' complete failure to assert any

25  such facts despite these opportunities leads the Court to assume that no such facts exist.

26  Therefore, Advocates cannot assert that it has associational standing to pursue this suit.

27  / / /

28  / / /

## II.      Leave to Amend or Supplement the Pleadings

Advocates' Response to the Order to Show Cause states that the "Plaintiff wishes to file for leave to amend the Complaint or file a Rule 15(d) supplemental pleading." (Doc. 22 at 3.) As of this moment, Advocates has not yet filed any such motion for leave. If Advocates did, this request would be denied.

A district court is permitted to deny leave to amend the pleadings when it finds "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Mr. Strojnik, Advocates' and Mr. Ritzenthaler's counsel, has more than 160 ADA cases currently pending in this Court, and his litigation tactics suggest an abuse of the court system. The complaints are largely identical. None of the complaints contain any specific factual allegations. (Doc. 1-2.) Instead, they each contain the same boilerplate language and assert vague, conclusory allegations. (*Id.*) Counsel relies on the use of clauses such as "and/or" to ensure that the form complaint may be used in multiple situations. (Doc. 1-2 at 3.) Counsel's decision to flood the court system with these vaguely worded form complaints rather than taking the time to fully develop their pleadings is incredibly concerning to the Court.

Furthermore, the Court allowed Advocates and Mr. Ritzenthaler several opportunities to supplement their allegations to show standing. Counsel had no less than three opportunities—in addition to the original complaint—to present facts that could establish standing. Therefore, any request to amend or file any additional supplemental pleadings will be denied.

## III.     Remand to State Court is the Proper Cure

The removal statute instructs that "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). The Ninth Circuit has implied that where a plaintiff would lack

1    standing in state court as well, a district court may dismiss the entire suit without remand.

2    *See Bell v. City of Kellogg*, 922 F.2d 1418, 1424–25 (9th Cir. 1991) ("Where the remand

3    to state court would be futile, however, the desire to have state courts resolve state law

4    issues is lacking. We do not believe Congress intended to ignore the interest of efficient

5    use of judicial resources.") However, this should be applied only "where there is absolute

6    certainty that remand would prove futile." *Id.* at 1425 (internal citations and quotations

7    omitted).

8         Arizona law does not impose the same standing requirements on parties that the

9    federal Constitution does. *Armory Park Neighborhood Ass'n v. Episcopal Cmty. Servs. in*

10   *Ariz.*, 148 Ariz. 1, 6, 712 P.2d 914, 919 (1985). Arizona's standing doctrine requires only

11   that "each party possess an interest in the outcome" to avoid issuing "mere advisory

12   opinions." *Id.* Arizona has held that standing can be waived entirely in certain

13   circumstances. *See Bennett v. Brownlow*, 211 Ariz. 193, 196, 119 P.3d 460, 463 (2005)

14   (noting that "[w]aiver of the standing requirement is the exception, not the rule.").

15         Due to Arizona's flexible standing doctrine, the Court cannot say that there is

16   "absolute certainty" that Mr. Ritzenthaler's or Advocates' claims would be dismissed if

17   they were remanded to state court. *Bell*, 922 F.2d at 1425. Therefore, remand to the state

18   court is the appropriate action in this case. Furthermore, the Court will not dismiss the

19   federal claims on remand because the state courts have concurrent jurisdiction to hear the

20   claims. *See Yellow Freight Sys., Inc. v. Donnelly*, 494 U.S. 820, 821 (1990) ("[W]e

21   conclude that Congress did not divest the state courts of their concurrent authority to

22   adjudicate federal claims.").

23                               **CONCLUSION**

24         The Plaintiffs cannot assert that any individual suffered an injury-in-fact, and thus

25   they lack the requisite standing to pursue this claim in federal court. Because there is a

26   chance that these claims will be heard in state court, remand is the appropriate remedy.

27   / / /

28   / / /

1    **IT IS THEREFORE ORDERED** directing the Clerk of Court to remand this

2    action back to Maricopa County Superior Court.

3        Dated this 13th day of October, 2016.

4

5    _____
     Honorable G. Murray Snow

6    United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28